IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | E.D. Pa. No. 13-250-M-1 |
| | : | |
| v. | : | (E.D. Tex. No. 4:12-cr-75) |
| | : | |
| SAAIM ASLAM | : | |

**MEMORANDUM ON**
**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                                  March 7, 2013

**I.      INTRODUCTION**

Defendant Saaim Aslam has been charged by superseding indictment, filed on February 14, 2003 in the United States District Court for the Eastern District of Texas, Sherman Division, with the offenses of conspiracy to manufacture, distribute or possess with intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  He was arrested on February 27, 2013.  He resides in Royersford, Pennsylvania and is employed in Malvern, Pennsylvania, within this judicial district.

The Government moved for pretrial detention pending Defendant's removal to the Eastern District of Texas.  A hearing was held on March 4, 2013 pursuant to the Bail Reform Act, 18 U.S.C. § 3142(f), at which time the Court ordered Defendant to be temporarily detained until a further hearing scheduled for March 6, 2013 for the provision of additional information regarding possible conditions for release.  Having taken that testimony, and pursuant to the discussion to follow, the Court will deny the Government's motion for detention.

1

## II. LEGAL STANDARDS

Pursuant to the Bail Reform Act, the Court must determine whether any "condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). If there are no such conditions, then pretrial detention "shall" be ordered. *Id.* As is apparent from the statutory scheme and consistent with the intent expressed in the legislative history, § 3142 favors release over pretrial detention, providing four alternatives from which the judicial officer must choose: (1) release on personal recognizance or unsecured appearance bond; (2) release subject to certain conditions; (3) temporary detention to permit, among other things, revocation of conditional release; or (4) pretrial detention. The statute mandates the analytical progression from one choice to the next. *Id.* § 3142(b)-(e).

In cases such as this one, where it is uncontested that Defendant is subject to a period of incarceration of at least 10 years under the Controlled Substances Act, the Government enjoys a presumption, pursuant to § 3142(e)(3)(A), "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."[1] This presumption, however, is "subject to rebuttal." § 3142(e)(3). In order to rebut the presumption, the defendant must produce some evidence that there are conditions of release sufficient to reasonably assure that he will not engage in dangerous criminal activity or flee pending trial. The burden of persuasion as to the lack of conditions that will reasonably assure appearance and safety, however, remains with the Government. *See, e.g., United States v. Perry,*

---

[1] The Government is also required to make a showing of probable cause. In Defendant's case, the grand jury indictment provides the probable cause required to trigger the rebuttable presumption of risk of flight and danger to the community. *See United States v. Suppa*, 799 F.2d 114, 119 (3d Cir. 1986).

2

788 F.2d 100, 115 (3d Cir. 1986); *United States v. Jessup*, 757 F.2d 378, 381-84 (1st Cir. 1985) (Breyer, J.). *See also United States v. Mastrangelo*, 890 F. Supp. 431, 436 (E.D. Pa. 1995) (noting that the government's burden after rebuttal is "either to prove by a preponderance of the evidence that he is a risk of flight, or to prove by clear and convincing evidence that he poses a danger to the safety of the community," *citing United States v. Himler,* 797 F.2d 156, 161 (3d Cir. 1986)).

Moreover, the statute directs the Court to take into account the following factors in determining whether there are conditions of release that will "reasonably assure" the defendant's appearance and the safety of others:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including--
>
>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not

reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

### III. THE PARTIES' CONTENTIONS

The Government argues in its motion that "no condition or combination of conditions will reasonably assure the presence of the defendant as required *and/or* the safety of the community." (Gov't Mot. at 2, 4 (emphasis added).) Based upon the factors cited in its motion and argued at the hearing, however, it is apparent that the impetus for the motion for pretrial detention is the concern that Defendant is a flight risk. The Government points to the fact that Defendant's parents and fiancée reside in Pakistan and that Defendant visited and stayed there for five months in 2012. (*Id.* at 1.) It asserts that Defendant previously "fled" from California, where he had lived for two and one-half years, to Pennsylvania after other persons alleged to be co-members with Defendant in a drug-trafficking organization were arrested in California. (*Id.* at 1-2.) The Government further notes that Defendant has only lived in Pennsylvania for approximately one year and has no family here. (*Id.* at 2.) The Government contends that the alleged "sophisticated[,] international" drug-trafficking organization in which Defendant is alleged to be "a key member" "has the means to secure foreign credentials" for Defendant. (*Id.* at 1.) It further points out that, if Defendant fled to Pakistan, he would likely avoid prosecution, as Pakistan does not have a mutual assistance legal treaty with the United States. (*Id.*)

Defendant contests the Government's position that there are no conditions that will reasonably assure his presence at an as-yet-to-be scheduled initial appearance in the Eastern District of Texas. Defendant has satisfied his burden to rebut the presumption that detention is necessary by coming forward with evidence at the detention hearing, as described below, that a combination of various conditions will reasonably assure his appearance in Texas. Nonetheless,

we "still keep in mind the fact that Congress has found that [drug] offenders, as a general rule, pose *special* risks of flight" and will "incorporate that fact and finding among the other special factors that Congress has told [the Court] to weigh when making [a] bail decision." *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.).

## IV. THE DETENTION HEARING OF MARCH 4 & 6, 2013

The Court has examined the factors found in 18 U.S.C. § 3142(g) and weighed the evidence according to the standards noted above. The Court finds, based upon the grand jury indictment, that there is probable cause to believe that Defendant committed offenses as set out in the Superseding Indictment. However, for the reasons set forth below, we find that there are a combination of conditions of release that give us reasonable assurance that Defendant will appear as required.

With respect to § 3142(g)(1), we note Defendant's charges do involve controlled substances, but that his alleged activities do not implicate any of the other factors listed (crimes of violence or involving a firearm, explosive, or destructive device; crimes of terrorism; sex trafficking; or crimes involving a minor victim). With respect to § 3142(g)(2), we recognize that the weight of the evidence against Defendant was sufficient to support a grand jury indictment. With respect to § 3142(g)(3), regarding the history and characteristics of Defendant, we note that he is college educated, completed a master's degree in Pakistan in 2005, and is currently pursuing a graduate degree through an online course of study. He was gainfully employed in California as a sales representative for two years before being laid off. He testified that when he was unsuccessful in finding new employment, he relocated to New Jersey to be closer to extended family residing there. He later secured employment as an IT developer with Vanguard, a reputable and well-established financial services company based in Malvern, Pennsylvania.

He has rented an apartment in nearby Royersford, Pennsylvania for twelve months. Defendant is unmarried and thirty years old. He has a close relationship with, and regularly visits, the family members that live in New Jersey, as well as family in the Washington, D.C. area.

Defendant denied any history of substance abuse and no drugs were found in his system upon his arrest. He reports monthly income from his salary in excess of his expenses such that he was been able to maintain a personal savings account with a current balance of $25,000. He has lived in the United States for more than six years and has no criminal history here. He pursued and achieved United States citizenship through the naturalization process and testified that he intended to bring his fiancée to the United States following their marriage and upon approval of immigration authorities. His parents live in Pakistan, but several aunts, uncles, cousins, and nieces and nephews live in the United States. While Defendant's ties to the United States may be of a somewhat more recent vintage, we find that they are significant, particularly given the value of his citizenship to himself, his fiancée, and his immediate family in Pakistan.

With respect to § 3142(g)(4), we do not find there to be any serious danger to the community that would result from Defendant's release pretrial. The Government has made reference to the arrests in California of other members of the alleged drug-trafficking organization. During his release, Defendant would be subject to various forms of monitoring, including of his bank accounts and lines of credit, such that any continued involvement in alleged money laundering and/or drug distribution would be highly unlikely. Defendant is not alleged to present a danger to the community in any other respect and we find no reason to believe him to pose a risk.[2]

---

2

   We note that the controlled substances that are the subject of the alleged drug-trafficking organization were described by the United States Attorney as comparable to Ritalin and Adderall. The substances did not include some of the more typical street drugs often associated with large-

In considering the question of whether conditions of release could be fashioned to reasonably assure Defendant's appearance in the Eastern District of Texas, we note Defendant's proposal to put up a bond of $225,000, comprised of a combination of cash and real estate. $160,000 of this amount is secured by the home of Defendant's uncle, Mohammad M. Kamal. Mr. Kamal appeared at the hearing and demonstrated that he understood the serious nature of his commitment to post this real estate and that the consequence of his nephew's failure to appear would be the loss of this property. Mr. Kamal further committed to undertaking custodial responsibilities of Defendant until his appearance in the Eastern District of Texas and transfer of his custody to that court's Pre-Trial Services department. This would involve Defendant remaining in Mr. Kamal's home on "lockdown electronic monitoring," permitting him to leave the home only for treatment of a serious medical issue or to consult with counsel, either of which would require that Mr. Kamal accompany Defendant. In addition, Mr. Kamal committed to travelling with Defendant by car from his home to Sherman, Texas, commencing such travel promptly upon notification as to Defendant's hearing date in Texas. With respect to the $65,000 cash (or cash equivalent) portion of the bond, we note that while Defendant's family has committed to providing $40,000, we will require Defendant himself to post his $25,000 savings.

We also note that the Government has suggested, in the chronology laid out in its motion, that Defendant has a history of flight from these charges, in that he left California when other members of this alleged conspiracy began to be arrested and that he spent some time in Pakistan thereafter. We do not agree that the history of his travels evidence an attempt to evade arrest on these charges. We credit Defendant's testimony that he left California to live with his uncle's family in New Jersey after he was unable to find a job. He explained that he joined that family

---

scale drug conspiracies, such as heroin or cocaine.

on a trip to Pakistan. While he remained in Pakistan for several months, including time spent on a religious pilgrimage, he continued to seek employment in the United States and returned when he secured his job at Vanguard. There is no suggestion that he concealed his identity in any way upon his return to the United States. Had he been motivated to remain beyond the reach of prosecutors for his alleged involvement in the drug-trafficking organization, he need only have remained in the safe haven of Pakistan. He did not. Therefore, we find nothing in Defendant's past travels that would suggest an inclination towards flight, as the Government suggests.

V. **CONCLUSION**

Pursuant to the evidence produced at the detention hearing on March 4 and 6, 2013, the Court finds that the government has failed to establish by a preponderance of the evidence that there are no combination of conditions that will reasonably assure Defendant's appearance as directed before the United States District Court for the Eastern District of Texas relative to the criminal case pending against him there. Rather, we find that the significant bond described above, coupled with the monitoring to be provided by Pre-Trial Services and by Mr. Kamal, who, by virtue of posting his family home, has a vested interest in Defendant's compliance with the conditions of his release, reflect a combination of conditions that reasonably assure that Defendant will appear as scheduled in the Eastern District of Texas.[3] An appropriate order follows.

---

[3] We note also that Defendant will be subject to a variety of standard conditions of release, including surrender of his passport, as will be set out in our Order.